UNITED STATES DISTRICT COURT
SOUTHERN DISTRIC OF NEW YORK
-----------------------------------------------------------X
ZOHREH STARR a/k/a ZOE STARR,                CV 07-5871 (DC)

            Plaintiff,

  -against-

TIME WARNER, INC. and TIME WARNER
CABLE, INC.,

            Defendants.
-----------------------------------------------------------X

### AFFIDAVIT OF PLAINTIFF ZOHREH STARR a/k/a ZOE STARR IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

STATE OF CALIFORNIA    )
                                  ) ss:
COUNTY OF LOS ANGELES  )

ZOHREH STARR a/k/a ZOE STARR being duly sworn, deposes and says:

1. I am the Plaintiff in the herewithin lawsuit.

2. I submit this Affidavit in opposition to Defendants TIME WARNER, INC.'s, (hereinafter "Time Warner") and TIME WARNER CABLE, INC.'s, (hereinafter "Time Warner Cable"), motion to dismiss the herewithin lawsuit, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

3. On or about September 8, 2003, I commenced working at Time Warner Cable at its at 290 Harbor Drive, Stamford, CT 06902.

4. I held the position of Manager, Marketing and Product Management.

5. While in the employ of Time Warner Cable, I was discriminated and harassed due to by Iranian origin.

6. While in the employ of Time Warner Cable, the company created a hostile work environment for me solely due to my Iranian origin, including, but not limited to,

stripping my projects and responsibilities within the company, launching a calculated defamatory campaign to bash my reputation, rarely speaking to me and advising my co-workers to do the same, omitting me from important communications, purposely excluding me from professional meetings, conferences and other related activities, excluding me from company sponsored social and recreational programs and blocking my attempts to transfer within the company.

7. As a result of Time Warner Cable's discriminatory conduct towards me, I became mentally and physically injured, which required me to take a medical leave of absence.

8. My medical leave of absence was authorized by Time Warner Cable.

9. My medical leave of absence fell within Time Warner Cable's employee disability insurance policy with UNUM Provident.

10. On or about August 30, 2004 I began treating with Dr. Joerg Bose for medical psychotherapy treatment. After my initial examination with Dr. Bose, he concluded that my condition was severely debilitating and he instructed for me to take a medical leave of absence. *Attached hereto as Exhibit "A" is a copy Dr. Boses' Attending Physician Statement to Defendants' insurance provider, UNUM Provident, dated September 17, 2004.* I followed Dr. Bose's instructions and a took medical leave of absence, which was approved by Time Warner Cable's insurance provider, UNUM Provident. Thereafter, I treated with Dr. Bose on a weekly basis.

11. Pursuant to my medical leave of absence, Dr. Boses was required to provide Time Warner Cable with an initial evaluation of my condition and treatment by September 27, 2004. On or about September 14, 2004, Time Warner Cable inexplicably demanded that said documents be provided earlier, by September 17, 2004, otherwise the

company would "... assume that you have voluntarily resigned from your position and would act accordingly." *Attached hereto as Exhibit "B" is a copy of Time Warner Cable's letter, dated September 14, 2004.* This letter further illustrates the harassment that I was forced to endure while in the employ of Time Warner Cable, which was debilitating and completely unwarranted. Nonetheless, my doctor and I complied with Time Warner Cable's demand and provided them with the necessary documentation.

12. On or about September 17, 2004, I sent a letter to Time Warner Cable specifically informing the company that "I am not resigning," and that the requested paperwork from my treating doctor would be forthcoming. *Attached hereto as Exhibit "C" is a copy of my letter to Time Warner Cable, dated September 17, 2004.*

13. Throughout my medical leave of absence I updated Time Warner Cable and UNUM Provident of my progress. On or about January 10, 2005, I sent Time Warner Cable a letter stating that "I am making progress. However, I am still under doctor's supervision and not in a condition to return to work yet. As for my plans... I wish to regain my health and resume my career. I would hope to be back by early April. Will it be possible to keep my position open until then, without undue hardship to the company?" *Attached hereto as Exhibit "D" is a copy of my letter to Time Warner Cable, dated January 10, 2005.*

14. On or about January 11, 2005, I received a letter from Time Warner Cable acknowledging receipt of my January 10, 2005 letter. The letter stated that Time Warner Cable "will not be able to hold your position until April. You can, however, apply for any position that is open at that time and that you are qualified for." *Attached hereto as Exhibit "E" is a copy of Time Warner Cable's letter, dated January 11, 2005.*

15. My attorneys have informed me that Time Warner Cable claims that said January 11, 2005 letter served as my notice of termination. This cannot be further from the truth. At no point in time that I ever consider that my employment with Time Warner Cable terminated on January 11, 2005. In fact, the letter specifically encouraged me to seek another position within the company after I was cleared by my doctor to return to work. I understood this statement to mean that I was still an employee of Time Warner Cable, but that upon my ability to return to work from my medical leave of absence, I would be assigned to a different position within the company that matched my qualifications.

16. There is absolutely no language in the January 11, 2005 letter suggesting that my employment with the company was terminated as of this date. This letter does not address the standard contents of termination notice, e.g., instructions on to how to obtain COBRA insurance; what would happen to my 401k, how I should proceed to collect my personal belongings; return items belonging to the company; schedule an exit interview, etc. A company of Time Warner Cable's size and resources presumably has a standard termination notice that is more thorough than the unsophisticated letter that I received. This standard letter presumably addresses the issues discussed above. I never received such a letter.

17. With the complete understanding that I was still an employee of Time Warner Cable, I continued to update Time Warner Cable of my medical status following receipt of the January 11, 2005 letter. At no point in time did Time Warner Cable advise me, in writing or otherwise, that I should stop providing these updated since I was no longer an employee of the company, as they now allege.

18. On or about March 29, 2005, I sent a letter to Time Warner Cable requesting assistance regarding my outstanding expense reports and my 2004 bonus. *Attached hereto as Exhibit "F" is a copy of my letter to Time Warner Cable, dated March 29, 2005*

19. In response, on or about April 7, 2005, I received a letter from Time Warner Cable informing me that my bonus payment was being processed and that I would be receiving a check within the week. Notably, there is absolutely no reference to the fact that my employment with the company terminated on January 11, 2005. *Attached hereto as Exhibit "G" is Time Warner Cable's letter, dated April 7, 2005.*

20. In June 2005, I sent a letter to Time Warner Cable informing the company that I was able to resume my career and "… was curious what opportunities/positions do you foresee opening up…" *Attached hereto as Exhibit "H" is my letter to Time Warner Cable letter, dated June 2005.*

21. In response, on or about July 11, 2005, I received a letter from Time Warner Cable requesting a copy of my resume. *Attached hereto as Exhibit "I" is Time Warner Cable's letter, dated July 11, 2005.* Time Warner Cable would not have requested my resume had I been terminated approximately six (6) months earlier.

22. In July 2005, I sent my resume to Time Warner Cable. *Attached hereto as Exhibit "J" is my letter to Time Warner Cable, enclosing my resume, dated July 2005.*

23. In September 2005, I sent a letter to Time Warner Cable inquiring about opportunities for me to resume my employment at the company. *Attached hereto as Exhibit "K" is a copy of my letter to Time Warner Cable, dated September 2005.*

24. On or about November 7, 2005, I received a letter from Time Warner Cable's Human Resources Department advising me of my option to enroll in the

company's 2006 employee benefits plan, including flexible spending or possible changes to my medical provider. *Attached hereto as Exhibit "L" is a copy of Time Warner Cable's letter, dated November 7, 2005.* Time Warner Cable would not have offered me benefits for 2006, if I was no longer an employee of the company dating back to January 11, 2005.

25. In January 2006, I sent a letter to Time Warner Cable informing the company that "I will be ready to return to work & resume my career as early as March 1 [2006]. Please let me know how to proceed[?]" *Attached hereto as Exhibit "M" is a copy of my letter to Time Warner Cable, dated January 2006.* I did not receive a response to this letter.

26. On or about February 24, 2006, I sent a follow-up letter to Time Warner Cable updating the company on my availability to return to work. *Attached hereto as Exhibit "N" is a copy of my letter to Time Warner Cable, dated February 24, 2006.* I did not receive a response to this letter.

27. On or about March 29, 2006, I sent a letter to Time Warner Cable expressing the fact that the company had not responded to "… my numerous letters regarding being able to return to work, I still have not heard from you." *Attached hereto as Exhibit "O" is a copy of my letter to Time Warner Cable, dated March 29, 2006.*

28. On or about April 7, 2006, I finally received a response from Time Warner Cable. Time Warner Cable informed me, for the first time, that due to "a restructuring in 2005" my former position with Time Warner no longer exists. *Attached hereto as Exhibit "P" is a copy of Time Warner's Letter, dated April 7, 2006.* However, since I was now medically cleared to return to work and Time Warner Cable refused to offer me employment, I understood that neither my previous job, nor any employment position

with the company, was available to me. Prior to receiving the April 7, 2006 letter I understood that, while I was on medical leave, I was still an employ of Time Warner Cable.

29. On or about October 4, 2006, I filed a claim with the United States Equal Employment Opportunity Commission, (hereinafter "EEOC"), complaining that my termination was wrongful on the account that it was based on a discriminatory practice stemming from my Iranian origin and my medical condition. *Attached hereto as Exhibit "Q" is a copy of my application to the EEOC, dated October 4, 2006.*

30. My application to the EEOC was timely as it was filed within 300 days of my termination of employment on April 7, 2006.

31. On or about March 27, 2007, the EEOC incorrectly relied on Time Warner Cable's false position that I was terminated on January 11, 2005 and determined that I was time-barred from filing a claim with the agency. *Attached hereto as Exhibit "R" is a copy of the EEOC's decision, dated March 27, 2007.* The EEOC did not provide me with any opportunity to refute Time Warner Cable's unsubstantiated position.

32. On or about April 3, 2007, I appealed the EEOC's March 27, 2007 decision. *Attached hereto as Exhibit "S" is a copy of the Appeal to the EEOC.* To date, the EEOC has not rendered a decision on my appeal.

33. The Defendants' motion to dismiss must be denied in its entirety.

34. My petition with the EEOC was filed timely. The Defendants' claim that I was terminated on January 11, 2005 is completely without merit and contrary to the evidence. The January 11, 2005 letter encourages me to seek employment within Time Warner Cable after I was medically cleared to resume my career. Encouraging me to seek employment within the company and subsequently requesting my resume after January 11, 2005 cannot be interpreted, in any way, that I was terminated on said date.

7

Furthermore, at no point in time did Time Warner Cable respond to any of my numerous letters to the company updating my medical condition and requesting information about a new placement within the company, dating back to March 29, 2005, that I was no longer an employee as of January 11, 2005.

35. In fact, on or about November 7, 2005, well after January 11, 2005, Time Warner Cable sent me a letter advising me of my option to enroll in the company's 2006 employee benefits plan, addressing my flexible spending or possible changes to my medical provider. *Attached hereto as Exhibit "L" is a copy of Time Warner Cable's letter, dated November 7, 2005.* Time Warner Cable would not have offered me benefits for 2006 if I was no longer an employee of the company dating back to January 11, 2005. The evidence simply does not support the Defendants' allegation that I was terminated on January 11, 2005. Therefore, my application with the EEOC was filed timely, within 300 hundred days of my actual date of termination, April 7, 2006, and my causes of action against the Defendants under American Disabilities Act of 1990, Title VII of the Civil Rights Act of 1964, Equal Opportunity for Individuals with Disabilities Act, and Family and Medical Leave Act, must be permitted to go forward.

36. In addition, due to the hostile work environment that I was forced to endure while in the employ of Time Warner Cable, solely due to my Iranian origin, my claims for negligent and intentional infliction of emotional distress are more than warranted. I became mentally and physically injured, which required me to take a medical leave of absence. I was terminated upon my treating doctor clearing me to return to work. Time Warner Cable must be held accountable for its cruel and malicious treatment towards me.

WHEREOFRE, the Defendants' motion to dismiss must be denied in its entirety.

_____
ZOHREH STARR

State of California

County of Los Angeles

On Sept 8 2007 before me, Larry D. Bruner
                                Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared Zohreh Starr
                     Name(s) of Signer(s)

☐ personally known to me – OR – ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.


LARRY D. BRUNER
Commission # 1586687
Notary Public - California
Los Angeles County
My Comm. Expires Jun 21, 2009

WITNESS my hand and official seal.

_____
Signature of Notary Public