UNITED STATES DISTRICT COURT
SOUTHERN DISTRIC OF NEW YORK
------------------------------------------------------X
ZOHREH STARR a/k/a ZOE STARR,                CV 07-5871 (DC)

                Plaintiff,

-against-

TIME WARNER, INC. and TIME WARNER
CABLE, INC.,

                Defendants.
------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' FED.R.CIV.P. 12(b)(1) and 12(b)(6) MOTION TO DISMISS THE COMPLAINT

Plaintiff ZOHREH STARR a/k/a ZOE STARR, (hereinafter "Starr"), respectfully submits this Memorandum of Law in opposition to Defendants TIME WARNER, INC., (hereinafter "Time Warner") and TIME WARNER CABLE, INC., (hereinafter "Time Warner Cable") motion, pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the complaint herein.

## STATEMENT OF RELEVANT FACTS

A complete statement of the pertinent facts in opposition to this motion is set forth in the Affidavit of Plaintiff Zohreh Starr.

In short, Ms. Starr was employed by Time Warner Cable as a Manager, Marketing and Product Management, at one of its offices located at 290 Harbor Drive, Stanford, CT. 06902. While in the employ of Time Warner Cable, Ms. Starr was discriminated and harassed due to her Iranian decent. Time Warner Cable created a hostile environment for her to work in, which included, but not limited to the following inappropriate actions: stripping Ms. Starr of her projects and responsibilities, launching a calculated defamatory

campaign to bash Ms. Starr's reputation, rarely speaking to her and advising co-workers to do the same, omitting her from important communications, excluding her from meetings and blocking her attempts to transfer within the company.

As a result of the hostility that she was forced to endure at Time Warner Cable, Ms. Starr became ill and took a medical leave of absence, which was approved by Time Warner Cable and its insurer UNUM Provident. While on medical leave, Ms. Starr continuously provided updates to the management of Time Warner Cable regarding her progress. In March 2006, Ms. Starr was cleared by her doctors to return to work, but was advised by Time Warner Cable via correspondence, dated April 7, 2006, that her job was no longer available to her. Ms. Starr was terminated on this date.

On or about October 4, 2006, Ms. Starr filed a claim with the United States Equal Employment Opportunity Commission, (hereinafter "EEOC"), complaining that her termination was wrongful on account that it was based on a discriminatory practice stemming from her medical condition and her Iranian origin. Ms. Starr's petition with the EEOC was within the requisite 300 days period of her termination of April 7, 2006.

Accordingly, Ms. Starr's claims against the Defendants for violations under American Disabilities Act of 1990, Title VII of the Civil Rights Act of 1964, Equal Opportunity for Individuals with Disabilities Act, and Family and Medical Leave Act, as well as her claims for negligent and intentional infliction of emotional distress, must be permitted to go forward.

**LEGAL ARGUMENT**

I. **OPPOSITION TO MOTION TO DISMISS STANDARD**

"A motion to dismiss for a failure to state a claim or for lack of subject matter jurisdiction should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Reese v. Potter, 2005 WL 3274052 (D.D.C.,2005).*

"In deciding a Rule 12b(6) motion to dismiss, the court must take all the allegations of the plaintiff's complaint as true, viewing them, together with all reasonable inferences, in the light most favorable to the plaintiff. A plaintiff's complaint should be dismissed for failure to state a claim only if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim." *Marconi v. White Sox, Ltd., 1985 WL 2726.*

"The Second Circuit has instructed that district courts must be especially cautious in deciding whether to grant the drastic remedy of summary judgment in a discrimination case, because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination. Because the discriminatory acts are often hidden under a veil of self-declared innocence, a discrimination victim is seldom able to prove his or her claim by direct evidence and is usually constrained to rely upon the cumulative weight of circumstantial evidence." *Howard v. Sprint/United Management Co., 299 F.Supp.2d 180, 187 (S.D.N.Y.,2003)* (Internal quotations and citations omitted).

As discussed below, the documentary evidence establishes that Ms. Starr claims under the American Disabilities Act of 1990, (hereinafter "ADA"), Title VII of the Civil Rights Act of 1964, (hereinafter "Title VII"), Equal Opportunity for Individuals with

3

Disabilities Act, (hereinafter "EEOC") and Family and Medical Leave Act, (hereinafter "FMLA") against the Defendants are timely and must <u>not</u> be dismissed under the 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## II. <u>PLAINTIFF ZOE STARR'S CLAIMS AGAINST THE DEFENDANTS UNDER ADA, TITLE VII AND FMLA ARE NOT TIME BARRED.</u>

In *Affrunti v. Long Island University*, 136 Fed.Appx. 402 (C.A.2 (N.Y.) 2005) the Court stated the general principle that "[t]he time period in which to file a charge with the EEOC [Equal Employment Opportunity Commission] begins on the date the employee has definite notice of the termination, not the date of actual discharge." Moreover, in *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349 C.A.1 (Puerto Rico 1992), the Court stated that in employment discrimination cases involving wrongful discharges the statute of limitations begins to run when the plaintiff learns of the decision to terminate his or her employment. The Court further stated that that the employer must unambiguously indicate that a final termination decision has been reached.

Applying the aforementioned principles to the case at bar, Ms. Starr's claims against the Defendants for violations under Title VII, the ADA and FMLA were timely filed with the EEOC, thereby permitting the herewithin action against the Defendants to proceed on the merits.

### A. Plaintiff's claims under Title VII and The ADA are not time barred as they were filed with the EEOC in a timely manner.

In *Haddad v. ITT Industries, Inc.*, 2007 WL 141949 (N.D.Ind.,2007) the Court addressed "... a two-prong test to determine the date of an unlawful employment practice: (1) there must be a final, ultimate, non-tentative decision to terminate the employee; and (2) the employer must give the employee unequivocal notice of its final

4

termination decision." *2007 WL 141949 (N.D.Ind.,2007)* (Internal quotations omitted). <u>See also</u>, *Mull v. ARCO Durethene Plastics, Inc., 784 F.2d 284, 288 (C.A.7 (Ill.), 1986)* (Unequivocal notice of termination is all that is required to start the limitations period running in a discrimination case.), *Pooler v. Supervalu Holdings, Inc., 963 (C.A.4 (Va.), 2004)* (Court held that the Plaintiff's petition with the EEOC was timely "[b]ecause [Plaintiff] did not receive unequivocal notice of his termination until June 13, 2002, we hold that his wrongful termination charge, filed with the EEOC on October 29, 2002, (138 days later) is timely.")

Applying the *Haddad* test, it is without question that Ms. Starr's claims under Title VII and The ADA are not time barred. On or about April 6, 2007, Ms. Starr received notice from Time Warner Cable that her employment with the company was terminated. On or about October 4, 2006, Ms. Starr filed a petition with U.S. Equal Employment Opportunity Commission, (hereinafter "EEOC"), within the requisite 300 days period of Time Warner Cable's April 6, 2007 notice of termination. Consequently, Ms. Starr has satisfied the prerequisite filing with the EEOC to maintain this suit under Title VII and the ADA.

Time Warner's claim that Ms. Starr was terminated on January 11, 2005 is completely without merit and contrary to the evidence. The subject January 11, 2005 notice that the Defendants refer to states the following:

> I received your request on January 10, 2005 to hold your position through April 2005. Unfortunately, we will be unable to hold your position until April. You can, however, apply for any position that is open at that time and that you are qualified for.

5

It is more than apparent that this letter is not a notice of termination of employment. Time Warner Cable merely stated that the position that Ms. Starr had with the company, prior to Ms. Starr taking a medical leave of absence, would not be available to her, while encouraging her to apply for another position within the company. Encouraging an employee to apply for another job within the company cannot be construed as a termination notice and is not sufficient to warrant dismissal of the subject case. This very point was addressed in *Sanche v. Orbanco, Inc., 876 F.2d 897 (C.A. 9 (Or.),1989)*. In this case, the Court stated the general principle that "[s]ummary judgment may be inappropriate where an employer gives an employee notice of termination but at the same time holds out the possibility of employment elsewhere in the company, provided the notice of termination is insufficient to alert the employee that he is being discharged in violation of the [Age Discrimination in Employment Act] ADEA." Although Ms. Starr is not seeking relief under the ADEA, this Court should apply a similar interpretation when analyzing her federal claims and must deny the Defendants' motion to dismiss.

Moreover, the letter does not address the standard elements in a termination notice, e.g. information about obtaining COBRA insurance, unemployment payments, how Ms. Starr should proceed to collect her personal belongings and return her identification card, keys, etc. Ms. Starr does not have access to the documents maintained by Time Warner Cable's human resources, but a company of Time Warner Cable's size and resources presumably has a more sophisticated standard form letter that it uses when notifying employees of their termination than the simple January 11, 2005 letter sent to Ms. Starr. The herewithin motion to dismiss must be denied so that Ms.

Starr can proceed with discovery to determine whether Time Warner Cable's general practices and procedures to terminate their employees is consistent with Ms. Starr's treatment and alleged termination of January 11, 2005.

Further evidence that Ms. Starr was not terminated on January 11, 2005 can be found in a series of communications that Ms. Starr had with Time Warner Cable following said date. As discussed in Ms. Starr's Affidavit, she maintained continuous contact with Time Warner Cable throughout her medical leave of absence until April 7, 2006. *Attached to Zohreh Starr's Affidavit as Exhibits "G, H, I, J, K, L, M, N, O, P."* At no point in time did Time Warner Cable indicate in any of its letter to Ms. Starr that her employment terminated on January 11, 2005.

Moreover, on July 11, 2005, in response to Ms. Starr's letter advising the company that she interested to return to work, Time Warner Cable requested Ms. Starr's resume. Time Warner Cable would not have made this request if Ms. Starr was terminated approximately six (6) month earlier. *Attached to Zohreh Starr's Affidavit as Exhibit "J" is Time Warner Cable's letter, dated July 11, 2005.*

On or about November 7, 2005, Time Warner Cable sent Ms. Starr a letter advising her of her 2006 employment benefits, including her options for flexible spending and to change her medical provider. Time Warner Cable would not have sent Ms. Starr this letter if she had already be terminated. *Attached to Zohreh Starr's Affidavit as Exhibit "M" is a copy of Time Warner Cable's letter, dated November 7, 2005.*

Based on the foregoing, it is more than apparent that Ms. Starr was not terminated on January 11, 2005, as the Defendants now allege. Ms. Starr was terminated on April 7, 2006. Her petition to the EEOC, dated October 4, 2006, was made within the requisite

300 day period. Ms. Starr's claims under the ADA and Title VII are timely. The Defendants' motion to dismiss must be denied.

### B. Plaintiff's claims under The FMLA are timely.

Ms. Starr's claims under the FMLA are timely as the herewithin lawsuit was commenced within two (2) years of her termination of employment at Time Warner Cable. As noted in the Defendants' moving paper, the two (2) year statute of limitations to commence an action under the FMLA begins to run on the date a plaintiff is notified of the employment action allegedly serving as the predicate to the FMLA claim. As discussed above, Ms. Starr was terminated from her employment at Time Warner Cable on April 6, 2007. Ms. Starr commenced the herewithin lawsuit on June 21, 2007, well within the two (2) year statute of limitations to maintain a claim under the FMLA. The Defendants' position that Ms. Starr is time-barred is contrary to the documentary evidence and must be dismissed.

## II. PLAINTIFF HAS SUFFICIENTLY PLED HER CLAIMS FOR NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

### A. Plaintiff's claim for negligent infliction of emotional distress is sufficiently pled under Connecticut law.

In *Kontos v. Laurel House, Inc.*, the Court noted that "[t]he Connecticut Supreme Court has set forth the elements of a negligent infliction of emotional distress claim as follows. The plaintiff must establish that: '(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress.' In the particular context of termination from employment, the court also has

made clear that courts must assess the circumstances and conduct surrounding the termination, rather than focusing on the employer's reasoning behind it. Thus, summarizing the relevant precedent, the court stated that 'in cases where the employee has been terminated, a finding of a wrongful termination is neither a necessary nor a sufficient predicate for a claim of negligent infliction of emotional distress." Instead, the court continued, "[t]he dispositive issue in each case [is] whether the defendant's conduct during the termination process was sufficiently wrongful that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm." *2007 WL 429624 (Conn.Super.,2007)* (Internal quotation marks omitted.)

"Unreasonable conduct [for the purposes of pleading negligent infliction of emotional distress] has been interpreted by the superior courts as conduct performed in an inconsiderate, humiliating or embarrassing manner." *Dubowsky v. New Britain General Hosp., 2006 WL 1230006 (Conn.Super.,2006).*

In the case at bar, Ms. Starr sufficiently pled a cause of action for negligent infliction of emotional distress. Ms. Starr alleges that due to her Iranian decent she was constantly harassed at work, was purposely excluded from professional meetings, conferences and other related activities, excluded from Time Warner Cable sponsored activities, including social and recreational programs and was purposely excluded from certain privileges of employment extended to other Time Warner Cable employees. Contrary to the Defendants' dismissive comments, the actions of Time Warner Cable were unreasonable and not "naturally incident to nearly every employment relationship." It was reasonably foreseeable that the mental anguish and trauma that Ms. Starr was

forced to endure would cause her to suffer injury and bodily harm, which she subsequently did. Her debilitating mental and physical condition was solely caused by the hostile work environment fostered by Time Warner Cable. Accordingly, Time Warner Cable's actions are not typical of a work environment and are undeniably sufficient for Ms. Starr to recover damages for negligent infliction of emotional distress caused to her by the Defendants.

Similar to the case at bar, the Court in *Noonan v. Miller Memorial Community Home, Inc.*, held that the "[t]he plaintiff has also set forth a series of actions by the defendants, which, if credited by the fact finder, are sufficient to support the elements of the plaintiff's cause of action. These include, but are not limited to, her demotion and replacement by a younger male, the issuance of a letter of severe reprimand, the search of her office and the ultimatum to accept a demotion or be fired. While these incidents, either standing alone or in the aggregate, may not ultimately persuade the fact finder, they are sufficient to withstand a motion to strike." *50 Conn.Supp. 367, --- A.2d ----, 2007 WL 2177687 (Conn.Super.,2007).* See, *Copeland v. Home & Community Health Services, Inc., 285 F. Sup.2d 144 (D.Conn.2003)* (holding that where employer pressured plaintiff to return to work by being inflexible about date on which she was required to return to work from medical leave, and by threatening to hire, and ultimately hiring, replacement when plaintiff did not return on desired date, a motion to dismiss should not be granted.); *Edwards v. Community Enterprises Inc., 251 F. Sup.2d 1089 (D.Conn.2003)* (holding that where plaintiff, who was living on premises as part of share-home community was terminated and then, despite knowledge that worker had pneumonia, was told to leave in forty-eight hours and was threatened to have police evict her, summary judgment motion

was denied); *Nance v. M.D. Health Plan, Inc., 47 F. Sup.2d 276 (D.Conn.1999)* (holding that where plaintiff alleges that he was terminated and sent home without incident but subsequent investigation performed in embarrassing manner and factual questions regarding when actual termination process began, motion to dismiss denied); *Cameron v. Saint Francis Hospital & Medical Center, 56 F. Sup.2d 235 (D.Conn.1999)* (denying motion to dismiss where plaintiff was notified of impending termination and alleged that he was subsequently treated in embarrassing and humiliating manner during the months leading up to his termination).

The Defendants' reliance on *Perodeau v. Hartford, 259 Conn. 729 (2002)* to claim that Ms. Starr is barred from maintaining a cause of action for negligent infliction of emotional distress is completely misguided.

"In *Perodeau* ... [Connecticut] Supreme Court declined to extend the tort of negligent infliction of emotional distress to conduct arising out of actions or omissions occurring within the context of a continuing employment relationship, as distinguished from conduct occurring in the termination of employment. After *Perodeau*, some Superior Court decisions that have addressed this issue have concluded that the Supreme Court's use of the phrase 'termination process' and 'termination of employment' means that an employee who resigns is precluded from bringing a claim for negligent infliction of emotional distress." *Sekas v. Enginunity Plm, LLC (2007 WL 1892675)*.

"The second approach is more reasoned and is not inconsistent with the policy reasons the court gave in *Perodeau* for limiting such claims to conduct that occurs during the 'termination of employment.' In *Perodeau*, the court's focus was on whether employees should be permitted to premise claims for negligent infliction of emotional

distress on conduct that occurs during an ongoing employment relationship. The court concluded that they should not be allowed to do so because 'when the employment relationship is ongoing, the public policies [of encouraging vigorous and productive workplace] outweigh the interests of persons subject to such behavior in the workplace in being compensated for their emotional injuries ... In cases involving a termination of employment, on the other hand, the employee can no longer use the threat of a lawsuit to influence the conduct of his employer and fellow employees.' This distinction applies whether the 'termination of employment' is initiated by the employer or by the employee." *Sekas v. Enginunity Plm, LLC (2007 WL 1892675)*.

Applying either approach to the *Perodeau* decision leads to the undeniable conclusion that Ms. Starr is within her right to maintain a cause of action for negligent infliction of emotional distress under Connecticut law. The *Perodeau* decision only bars a cause of action for negligent infliction of emotional distress when the Plaintiff resigns from employment, not when he or she is terminated. Since Ms. Starr was terminated from her employment at Time Warner Cable, the *Perodeau* decision is not applicable. Accordingly, Ms. Starr is within her right to maintain a cause of action for negligent infliction of emotional distress since the allegations in her complaint arose out of the "termination of employment process."

The additional cases cited by the Defendants are not applicable to the facts herein and are not sufficient to dismiss Ms. Starr's claim for negligent infliction of emotional distress. In *Allen v. Egan, 303 F.Supp.2d 71 (D.Conn.,2004)* the sole reason why the Court dismissed the Plaintiff's claim for negligent infliction of emotional distress was because Plaintiff "... was not terminated, and any basis for his claims must necessarily

have arisen during his employment relationship with defendants." Likewise, in *Walsh v. Walgreen Eastern Co., Inc.* 2004 WL 722226 (D.Conn.,2004) the Plaintiff resigned from his position as a pharmacist with the Defendant. Here, Ms. Starr was terminated by Time Warner Cable. These two (2) cases cited by the Defendants are not applicable to the case at bar and must be discounted by the Court.

Consequently, Ms. Starr's cause of action for negligent infliction of emotional distress must be permitted to go forward and the Defendants' motion to dismiss must be denied.

### B. Plaintiff's claim for intentional infliction of emotional distress is sufficiently pled under both Connecticut law.

"In order for the plaintiff to prevail in a case for liability under ... [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. All four elements must be established to prevail on a claim for intentional infliction of emotional distress. Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." *Craddock v. Church Comm. Supported Living Assn.* 2000 WL 33159150 (Conn.Super.,2000).

"A review of recent Connecticut decisions on the issue of extreme and outrageous conduct within the context of a claim for intentional infliction of emotional distress reveals that there is no bright line rule to determine what constitutes extreme and

outrageous conduct sufficient to maintain this action. The court looks to the specific facts and circumstances of each case in making its decisions." *Craddock v. Church Comm. Supported Living Assn. 2000 WL 33159150*.

The Court *Craddock v. Church Comm. Supported Living Assn. 2000 WL 33159150* held that "… reasonable people could disagree as to whether the facts alleged by the plaintiff satisfy the extreme and outrageous requirement for intentional infliction of emotional distress. The court must construe the complaint in favor of sustaining its legal sufficiency, and, therefore, the motion to strike count six of the plaintiff's amended complaint [alleging intentional infliction of emotion distress] is denied." *2000 WL 33159150)* (Internal quotation marks omitted.) See, *Lin v. Yale University, 1998 WL 573250 (Conn.Super.,1998)* (Court held that considering the allegations as a whole, reasonable minds could differ as to whether the employer's conduct towards the Plaintiff, if proven, rises to the level of extreme and outrageous conduct to constitute intentional infliction of emotional distress.)

The facts of *Nwachukwu v. State of Connecticut Dept. of Labor, 1998 WL 123073 (Conn.Super.,1998)* are similar to the case at bar and the Court denied the Defendants' motion to dismiss the Plaintiff's claim for intentional infliction of emotion distress. In *Nwachukwu* "the plaintiff allege[d] continual and repetitive insulting, humiliating, harassing, and discriminatory conduct due to the plaintiff's race by the defendant." *Id.* The Court held that "[i]n light of the facts in the complaint which must be construed most favorably to the plaintiff, and measured by the foregoing standards, the court cannot find, as a matter of law, that the plaintiff has failed to set forth a legally sufficient claim for intentional infliction of emotional distress. In the present case, reasonable people could

differ as to whether the alleged multiple actions by [the employer] Acas, when viewed in their entirety, rise to the level of extreme and outrageous conduct. Because the court 'must ... construe the complaint in the manner most favorable to sustaining its legal sufficiency' the motion to strike count two [intentional infliction of emotion distress] is denied." *Id. Hernandez v. Standard Mattress Co.*, 1994 WL 728838 (Conn.Super.,1994) (Courts have recognized the intentional infliction of emotional distress claims in cases of employment discrimination based on race or ethnic origin.)

Consistent with *Nwachukwu*, Ms. Starr's claim for intentional infliction of emotional distress must be permitted to go forward since Time Warner Cable's discriminatory conduct arose out of Ms. Starr's Iranian origin. Time Warner Cable intended to inflict emotional distress, or at the very least, should have known that emotional distress was the likely result of its conduct toward Ms. Starr. While in the employ of Time Warner Cable, Ms. Starr experienced a pattern of abusive conduct due to her Iranian decent, including, but not limited to stripping Ms. Starr of her projects and responsibilities, launching a calculated defamatory campaign to bash her reputation, rarely speaking to her and advising co-workers to do the same, omitting her from important communications, excluding her from professional meetings, conferences and other related activities, excluding her from company social and recreational programs extended to other Time Warner Cable employees and blocking her attempts to transfer within the company. This hostile and harassing conduct by Time Warner Cable, all due to Ms. Starr's Iranian decent, caused her to become physically and mentally injured. As Ms. Starr's medical condition grew worse, she was directed by her treating physician to take a medical leave of absence, which she did. The emotional distress sustained by Ms.

Starr was so severe that she remained out of work under her doctor's care for an extended period of time. When she was finally cleared to resume her normal daily activities and return to work, Time Warner Cable terminated her for no cause. As a result of Time Warner Cable's egregious conduct toward Ms. Starr her life has forever changed. Although Ms. Starr has been medically cleared to return to work, the humiliation and harassment that she endured while in the employ at Time Warner Cable continues to linger in her both her professional and personal life.

Consequently, Ms. Starr's cause of action for intentional infliction of emotional distress must be permitted to go forward and the Defendants' motion to dismiss must be denied.

WHEREOFRE, the Defendants' motion to dismiss must be denied in its entirety.

Dated: New York, New York
September 10, 2007

Yours, etc.,
SYLVOR & RICHMAN, LLP

By: _____
BORIS SORIN, ESQ. (BS-9689)
Attorneys for Plaintiff
605 Third Avenue – 15th Floor
New York, N.Y. 10158
(212) 972-1100