```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
ZOHREH STARR a/k/a ZOE STARR,        :
                Plaintiff,           :
        - against -                  :
TIME WARNER, INC. and TIME WARNER    :
CABLE, INC.,
                                     :
                Defendants.
                                     :
- - - - - - - - - - - - - - - - - -x
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/21/2007
```

**MEMORANDUM DECISION**

07 Civ. 5871 (DC)

**APPEARANCES:**   SYLVOR & RICHMAN, LLP
Attorneys for Plaintiff
    By:  Boris Sorin, Esq.
605 Third Avenue, 15th Fl.
New York, New York  10158

SEYFARTH SHAW LLP
Attorneys for Defendants
    By:  Richard Reice, Esq.
         Anjanette Cabrera, Esq.
620 Eighth Avenue
New York, New York  10018

**CHIN, D.J.**

In this employment discrimination case, plaintiff Zohreh "Zoe" Starr alleges that her former employer, Time Warner Cable ("TWC"), discriminated against her and terminated her employment because of her disability and Iranian origin. Starr brings claims against TWC and its parent company Time Warner ("TW") under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans With Disabilities Act (the "ADA"), the Family Medical Leave Act (the "FMLA"), New York State Human Rights Law ("State Human Rights Law" or "NYSHRL"), New York City Human Rights Law ("City Human Rights Law" or "NYCHRL"), and Connecticut Fair Employment Practices Act ("CFEPA"). She also

claims damages for negligent and intentional infliction of emotional distress ("NIED" and "IIED," respectively).

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, they argue that the Title VII, ADA, FMLA, and CFEPA claims are time-barred; that New York State and City laws are inapplicable because all alleged acts occurred in Connecticut; and that Starr has failed to state a claim on which relief can be granted under state tort laws. TW also moves to dismiss all claims against it on the ground that the complaint "fails to allege any relationship between Time Warner Cable and Time Warner, Inc. or between Time Warner, Inc. and Plaintiff." (Def. Mem. 2). For the reasons that follow, defendants' motion to dismiss is denied in part and granted in part.

## BACKGROUND

For purposes of this motion, the facts as alleged in Starr's complaint are assumed to be true. Although the parties have submitted affidavits and exhibits with their briefs, on a motion to dismiss, a court's consideration is "limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). Accordingly, I do not rely on the parties' affidavits and exhibits for purposes of this motion, except for certain documents incorporated in the complaint by reference.

**A.    Facts**

On September 8, 2003, Starr, then a resident of New York State, began working at TWC's offices in Stamford, Connecticut. (Compl. ¶ 10). Plaintiff alleges that during her employment, TWC created a hostile work environment and discriminated against her because of her Iranian origin. Specifically, she alleges that TWC took away her projects and responsibilities, cut her off from work-related communications, excluded her from meetings and company activities, advised other employees not to speak to her, attempted to damage her reputation at TWC, and prevented her from transferring to another department. (Compl. ¶¶ 11-18).

As a result of the treatment she endured at TWC, Starr became mentally and physically ill, thus requiring leave of absence for psychotherapy beginning in August 2004. (Compl. ¶ 19). TWC's insurance provider, UNUM Provident, paid for Starr's medical care, which involved weekly therapy sessions with Dr. Joerg Bose. (Compl. ¶ 22). Nearly two years later, in March 2006, Dr. Bose approved Starr's return to work. (Compl. ¶ 25).

Starr, however, never returned to TWC as an employee. Starr alleges that on April 7, 2006, "TWC advised Plaintiff that neither her job, nor any employment position with the company, was available to her." (Compl. ¶ 28).

**B.    Procedural History**

Plaintiff's complaint states that on October 4, 2006, she filed a claim with the United States Equal Employment

-3-

Opportunity Commission (the "EEOC"). (Compl. ¶ 29). The EEOC's letter accompanying its Notice of Dismissal and Right to Sue, however, indicates that Starr's claim was received and filed with the EEOC in November 2006. (Pl. Ex. R). On March 27, 2007, the EEOC found that "[a]fter being out on long-term disability for several months, [TWC] notified you by letter, on January 11, 2005, that the company could no longer hold your position open any longer." (Id.). Consequently, the EEOC determined that it lacked jurisdiction to investigate Starr's charge of discrimination because the charge was not filed within 300 days from the date of the last alleged violation as required by law. (Id.; see also Compl. ¶ 30).

Plaintiff appealed the EEOC's decision on April 3, 2007 (Pl. Ex. S), and filed the instant action on June 21, 2007.

## DISCUSSION

### A.  Pleading Standards

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996); see Erickson v. Pardus, 127 S. Ct. 2197, 2199 (2007) (per curiam); Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

On a motion to dismiss for failure to state a claim, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Bell Atl. Corp., 127 S. Ct. at 1965 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). In its recent holding in Bell Atlantic Corp., the Supreme Court announced the "retirement" of the oft-quoted "no set of facts" language from Conley v. Gibson, 355 U.S. 41, 47 (1957), adopting in its place a "plausibility" requirement. Bell Atl. Corp., 127 S. Ct. at 1969. As interpreted by the Second Circuit, Bell Atlantic Corp. did not announce a "universal standard of heightened fact pleading, but . . . instead requir[es] a flexible 'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

In any event, "bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations" and will not defeat a motion to dismiss. Gavish v. Revlon, Inc., No. 00-7291, 2004 WL 2210269, at *10 (S.D.N.Y. Sept. 30, 2004) (quoting Citibank, N.A. v. Itochu Int'l, Inc., No. 01-6007, 2003 WL 1797847, at *1 (S.D.N.Y. Apr. 4, 2003)).

**B.   Title VII**

    **1.   Statute of Limitations**

Under Title VII, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days in states

such as New York and Connecticut that have an agency with the authority to address charges of discriminatory employment practices.  42 U.S.C. § 2000e-5(e)(1).  Failure to file a timely charge of discrimination with the EEOC renders that claim time-barred, thereby preventing a claimant from bringing the claim in federal court.  Williams v. Bd. of Educ., 972 F. Supp. 248, 249 (S.D.N.Y. 1997).

Defendants argue that Starr's Title VII claim is time-barred by disputing April 7, 2006 as the date on which Starr was terminated as an employee of TWC, as she alleges in her complaint.  Defendants claim that "the 300-day window for Starr to file her charge began on January 11, 2005, when Time Warner Cable first notified her of the decision to terminate her employment."  (Def. Mem. 8).  Because the court must accept the factual allegations of the complaint as true on a motion to dismiss, I use the date of termination as alleged in plaintiff's complaint for purposes of this motion.  (See Compl. ¶ 28).

Plaintiff's complaint also states that she filed a discrimination charge with the EEOC on October 4, 2006, which is contradicted by the EEOC's letter dismissing her case.  But it is not necessary to decide here whether Starr filed her charge on October 4, 2006, as she claims, or on November 24, 2006, as the EEOC's letter indicates, to determine whether her claim was timely filed, for both dates fall within 300 days of April 7, 2007, the date alleged by plaintiff as her date of termination.  Accordingly, based on the allegations of the complaint, Starr filed a timely charge of discrimination with the EEOC.

Defendants' motion to dismiss the Title VII claim as time-barred is denied, without prejudice to the filing of a summary judgment motion if discovery shows that plaintiff's employment was actually terminated on January 11, 2005.

### 2. **Elements of a Title VII Claim**

Turning to the merits, a prima facie case of discrimination under Title VII requires a plaintiff to show that "(1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination." Garcia v. New York City Admin. of Children's Servs., 2007 WL 2822153, at *4 (S.D.N.Y. 2007). In Swierkiewicz v. Sorema N. A., the Supreme Court held that a complaint in an employment discrimination action need not contain specific facts establishing a prima facie case of discrimination to survive a motion to dismiss. 534 U.S. 506, 511 (2002). The Supreme Court held that because "the prima facie case operates as a flexible evidentiary standard," a complaint need only comply with the pleading standard articulated in Federal Rule of Civil Procedure 8(a) to assert an employment discrimination claim. Id. at 512. Thus, the "complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Hence, a

plaintiff in a Title VII case need only allege that she was discriminated against in the terms and conditions of her employment on account of national origin or other unlawful factor.

Applying the pleading standard articulated in Rule 8(a), I conclude that Starr's complaint satisfies the Rule's requirements because it gives defendants fair notice of the basis for petitioner's claims.  Although plaintiff's complaint does not provide specific facts attributing TWC's treatment of her to a discriminatory motive, she does allege that she was dismissed on account of her national origin in violation of Title VII. (Compl. ¶¶ 63-66).  The complaint states the events leading to her dismissal (id.), and these allegations give defendants fair notice of what her claims are and the grounds upon which they rest.  Because Starr states claims upon which relief could be granted under Title VII, defendants' motion to dismiss the Title VII claim is denied.

**C.   The ADA**

   **1.   Statute of Limitations**

The statute of limitations for filing a claim under the ADA and Title VII are identical.  42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2005e-5(e)).  Accordingly, for the reasons set forth above, defendants' motion to dismiss the ADA claim as time-barred is denied.

### 2. Elements of an ADA Claim

To establish a prima facie ADA case, a plaintiff must show that "(1) plaintiff's employer is subject to the ADA; (2) plaintiff was disabled within the meaning of the ADA; (3) plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) plaintiff suffered [an] adverse employment action because of her disability." Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004). Although "a plaintiff need not plead 'specific facts establishing a prima facie case of discrimination'" in violation of the ADA to survive a motion to dismiss, Ridgway v. Metropolitan Museum of Art, No. 06-5055, 2007 WL 1098737, at *3 (S.D.N.Y. Apr. 10, 2007) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002)), as discussed below, Starr has failed to plead that she was qualified to perform the essential functions of her job with or without reasonable accommodation or that she suffered adverse employment action because of her disability.

### a. Starr Is Not Qualified To Perform Essential Functions of Job, With Or Without Reasonable Accommodation

Starr alleges that "she was discharged due to her disability" and "during and/or following her medical leave of absence." (Compl. ¶¶ 45, 50). But these allegations do not state an ADA claim because a nearly two-year leave of absence is not a reasonable accommodation under the ADA.

In general, a leave of absence is a reasonable accommodation. Powers v. Polygram Holding, Inc., 40 F. Supp. 2d 195, 201 (S.D.N.Y. 1999). The ADA, however, "does not require an employer to grant an employee an indefinite leave of absence." Stamey v. NYP Holdings, Inc., 358 F. Supp. 2d 317, 324 (S.D.N.Y. 2005) (citing Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 9 (2d Cir. 1999)). An employer cannot be expected to hold a job open for an extended period of time. A medical leave would be unreasonable if, for example, "the request is for a very long leave of absence, such as one year." Powers, 40 F. Supp. 2d at 201. Although the Powers Court did not "hold that any exact number is the 'red line' that demarcates the reasonable from the unreasonable," a nineteen-month leave is substantially more than the year that the Court found to be "very long." Id. As a matter of law, a two-year leave is too long an absence from work to be reasonable. Plaintiff, therefore, has not sufficiently pled that she was qualified to perform her job with or without reasonable accommodations.

    **b.** **Starr Did Not Suffer Adverse Employment Action Because of Her Disability**

In support of her ADA claim, Starr makes numerous allegations that TWC discriminated against her because of her Iranian origin, but not because of her disability. (See, e.g., Compl. ¶¶ 49, 51, 52, 53). The ADA protects employees only from discrimination on the basis of a disability, and so these allegations do not support a claim under the ADA.

Because Starr has failed to plead that she could perform the essential functions of her job with or without reasonable accommodations or that she suffered adverse employment action because of her disability, her ADA claim is dismissed.

### D.  The FMLA

Plaintiff does not state a claim under the FMLA for at least two reasons.  First, she does not qualify for benefits under the Act.  Section 2611 defines an "eligible employee" as one "who has been employed for at least 12 months by the employer with respect to whom leave is requested."  29 U.S.C. § 2611.  As alleged in the complaint, Starr had only worked eleven months, from September 2003 to August 2004, before going on medical leave.  (See Compl. ¶¶ 10, 19).  Thus, plaintiff is not an eligible employee qualified for FMLA benefits.

Second, the FMLA provides eligible employees with the right to "a total of 12 workweeks of leave during any 12-month period" for a serious medical condition as defined by the Act. 29 U.S.C. § 2612(a)(1).  Starr was on uninterrupted medical leave from August 27, 2004 to April 7, 2006 -- a total of nineteen months.  The FMLA does not protect employees from adverse employment action as a result of a medical leave that lasts for a period longer than twelve weeks per year.  Consequently, Starr was not denied any benefits under the FMLA.  Because plaintiff was not an eligible employee and, furthermore, did not suffer a violation of a right that is protected under the FMLA, defendants' motion to dismiss the FMLA claim is granted.

**E.   City Human Rights Law**

Starr brings a claim under New York City Code § 8-107, which prohibits discharge from employment on the basis of national origin and disability.  To state a claim under the City Human Rights Law, however, "a plaintiff must allege that he was discriminated against by the defendant within New York City." Duffy v. Drake Beam Morin, No. 96-5606, 1998 WL 252063, at *11 (S.D.N.Y. May 19, 1998) (finding that "both New York State law and the New York City Administrative Code limit the applicability of the City Human Rights Law to acts occurring within the boundaries of New York City") (citing N.Y. Gen. Mun. Law § 239-s and N.Y.C. Admin. Code § 2-201).  Because Starr does not allege any discriminatory conduct occurring in New York City, her City Human Rights Law claim is dismissed.

**F.   State Human Rights Law**

The State Human Rights Law, unlike the City Human Rights Law, may apply to discriminatory acts committed outside New York State if they are "committed outside this state against a resident of this state . . . [and] such act would constitute an unlawful discriminatory practice if committed within this state." N.Y. Exec. Law § 298-a.  Because Starr is a New York State resident, she may bring a claim against a non-resident employer for acts committed outside New York State.

The elements of a prima facie case for discrimination prohibited by the NYSHRL are the same as a claim under the ADA: "plaintiff must show that (1) her employer was subject to the

NYSHRL; (2) she was disabled within the meaning of the NYSHRL; (3) she was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) she suffered adverse employment action because of her disability."  Roberts v. Ground Handling, Inc., 499 F. Supp. 2d 340, 357 (S.D.N.Y. 2007).  For the reasons given above for dismissing Starr's ADA claim, Starr's claim under the State Human Rights Law is likewise dismissed.

**G.   The CFEPA**

Starr brings a claim under section 46a-60 of the CFEPA, which prohibits discriminatory employment practices on the basis of national origin and disability.  To bring an action under the CFEPA, a plaintiff must first file a complaint with Connecticut's Commission on Human Rights and Opportunities ("Commission") within 180 days after the alleged act of discrimination.  Conn. Gen. Stat. §§ 46a-82, 46a-100.

Starr has not met the two requirements to state a claim under Connecticut's anti-discrimination law.  First, she did not file a complaint with the Commission prior to bringing this action before the EEOC and this Court.  Second, more than 180 days had passed before Starr filed a charge with the EEOC. Starr's claim under Connecticut law is time-barred and, therefore, dismissed.

**H.   State Tort Claims**

Starr brings state tort claims for negligent and intentional infliction of emotional distress, but the complaint

does not specify which state law -- New York or Connecticut -- applies to this case.  In any event, Starr does not state a claim for either negligent or intentional infliction of emotional distress under both New York and Connecticut laws, so these claims are dismissed.

   1.   **NIED**

      a.   **New York Law**

In New York, "[a] cause of action for negligent infliction of emotional distress arises only in unique circumstances, when a defendant owes a special duty only to plaintiff" or "where there is proof of a traumatic event that caused the plaintiff to fear for her own safety."  Cucchi v. New York City Off-Track Betting Corp., 818 F. Supp. 647, 656 (S.D.N.Y. 1993).  Starr alleges that TWC's treatment towards her during her employment as well as the termination of her employment were negligent acts, which "inflicted shock, trauma, mental anguish and emotional distress."  (Compl. ¶ 171).  The discharge of an employee, however, does not give rise to a claim for negligent infliction of emotional distress because a corporation owes the same duties to all employees.  Kelly v. Chase Manhattan Bank, 717 F. Supp. 227, 235 (S.D.N.Y. 1989).

   Although Starr also alleges that TWC's conduct towards her during her employment was negligent and caused her emotional distress, the reduction of work responsibilities and exclusion from meetings and work-related activities do not amount to conduct that would unreasonably endanger one's physical safety or

cause one to fear for her safety, as required for an NIED claim. See Perry v. Valley Cottage Animal Hosp., 690 N.Y.S.2d 617, 522-23 (2d Dep't 1999) ("to recover damages for negligent infliction of emotional distress, such a cause of action must generally be premised upon conduct that unreasonably endangers a plaintiff's physical safety or causes the plaintiff to fear for his or her own safety"). Because TWC neither owed plaintiff a special duty nor caused her to fear for her safety, Starr fails to state a claim for negligence under New York law.

### b. Connecticut Law

In Connecticut, claims for negligent infliction of emotional distress are restricted to conduct occurring during the process of the termination of employment. Perodeau v. City of Hartford, 259 Conn. 729, 757-63 (2002). Accordingly, Starr's allegations of tortious conduct during her employment at TWC do not support a claim for NIED under Connecticut law.

For conduct occurring in the context of termination to amount to a negligent infliction of emotional distress, Connecticut courts generally require that termination be done in a way that is "unreasonable, humiliating, or embarrassing." Almeida v. Athena Health Care Associates, Inc., 2007 WL 2221164, at *3 (D. Conn. 2007). The "mere act of terminating the plaintiff's employment is insufficient to establish [an NIED] claim." Contois v. Carmen Anthony Restaurant Group, No. 160287, 2001 WL 195396, at *6 (Conn. Super. Feb. 2, 2001).

Here, Starr alleges only that her discharge was wrongful, and does not allege any other conduct on the part of

TWC that humiliated or embarrassed her.  Accordingly, plaintiff's allegations do not state a claim for NIED.

### 2.  **IIED**

To state a claim for IIED under both Connecticut and New York laws, a plaintiff must plead the following four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996) (citing Howell v. N.Y. Post Co., 81 N.Y.2d 115, 121 (1993)); see also Petyan v. Ellis, 200 Conn. 243, 253 (1986).

Both Connecticut and New York courts treat the first element as a threshold issue when analyzing an IIED claim because the "requirement of extreme and outrageous conduct is rigorous, and has been met only 'where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency.'"  Tadros v. Public Employees Federation, No. 94-6893, 1996 WL 631705, at *5 (S.D.N.Y. 1996) (citing Fischer v. Maloney, 402 N.Y.S.2d 991, 993 (1978)); see also Rodican v. Heartcare Assocs. of Conn., No. 75008889S, 2007 WL 2363878, at *4 (Conn. Super. Aug. 2, 2007) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.").  Starr alleges only that she was isolated and excluded in the workplace; this alleged

behavior does not rise to that level of outrageous conduct required to state an IIED claim.  Accordingly, Starr's intentional tort claims are dismissed under both Connecticut and New York laws.

**J.    TW as a Party**

TW argues that plaintiff's claims against it must be dismissed because "Starr has failed to plead any facts that Time Warner was ever involved in any aspect of her employment or termination."  (Def. Mem. 6).  The Second Circuit has held that "parent companies may be considered employers of a subsidiary's employees" for the purposes of Title VII when evidence shows that the two companies have "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240-1 (2d Cir. 1995).

Plaintiff has not alleged any such facts in her complaint.  Accordingly, the Title VII claim against TW is dismissed.  Because there are no remaining claims against TW, it is dismissed as a party in this case.

## CONCLUSION

For the reasons set forth above, the motion to dismiss is denied in part and granted in part.  It is denied as to Starr's claim of employment discrimination under Title VII against TWC.  All other claims in the complaint are dismissed, and all claims against TW are dismissed.

A pretrial conference will be held on December 7, 2007, at 11:30 a.m. at 500 Pearl Street, New York, New York 10007, Courtroom 11A.

SO ORDERED.

Dated:  New York, New York
        November 21, 2007

DENNY CHIN
United States District Judge